People v James (2026 NY Slip Op 00406)

People v James

2026 NY Slip Op 00406

Decided on January 29, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 29, 2026

113688
[*1]The People of the State of New York, Respondent,
vLewis James, Appellant.

Calendar Date:April 22, 2024

Before:Garry, P.J., Clark, Ceresia, Fisher and Powers, JJ.

Steven M. Sharp, Albany, for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered July 15, 2022 in Albany County, upon a verdict convicting defendant of the crimes of criminally using drug paraphernalia in the second degree, criminal possession of a controlled substance in the fourth degree (two counts) and criminal possession of a controlled substance in the third degree (two counts).
This matter returns to us following remittal to Supreme Court for further development of the record (229 AD3d 1008 [3d Dept 2024]). By way of background, on November 3, 2019, a traffic stop was initiated of the vehicle defendant was operating with the codefendant as a passenger. Upon detecting the odor of marihuana, both individuals were removed from the vehicle and their persons searched. Defendant was found to be in possession of a small amount of marihuana and a hotel key card, the codefendant was in possession of six baggies of crack cocaine and an identical key card, and a box of 500 glassine envelopes was discovered within the vehicle. A warrant was obtained for the hotel room associated with that key card and a search thereof located quantities of heroin and cocaine. As a result, defendant was charged with one count of criminally using drug paraphernalia in the second degree (see Penal Law § 220.50 [2]), two counts of criminal possession of a controlled substance in the fourth degree (see Penal Law § 220.09 [1]) and two counts of criminal possession of a controlled substance in the third degree (see Penal Law § 220.16 [1]). Defendant proceeded to trial after an unsuccessful motion to dismiss the indictment, among other things, and was convicted as charged. He was sentenced to concurrent prison terms of five years, to be followed by two years of postrelease supervision, for his convictions on the two counts of criminal possession of a controlled substance in the third degree and lesser concurrent prison terms on the remaining convictions. Defendant appeals.
As more precisely explained in our prior decision, defendant contends, among other things, that he was denied his statutory speedy trial rights as a result of the People's noncompliance with the automatic disclosure requirements of CPL 245.20. Due to the misplaced reliance on the People's standing affirmation, which failed to detail the efforts of the District Attorney's office in this case, we found that Supreme Court did not "ensure that an adequate record was made as to the People's efforts and failed to consider whether the People had exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery, as required by CPL article 245" (229 AD3d at 1011 [internal quotation marks, brackets and citations omitted]). Therefore, we remitted "the matter to Supreme Court to further develop the record and render an express determination as to whether the initial [certificate of compliance] was rendered illusory by the belated additions to the witness list"[*2](id. at 1012).
The People's supplemental submissions demonstrate that the names of the two Colonie Police Department officers who were added to the May 2021 witness list had previously been included in the initial discovery disclosure, as both were indicated as being present during defendant's arrest. The supplemental submissions similarly demonstrate that the People were unaware of the involvement of the State Police investigator until receipt of the extraction report of defendant's cellphone in January 2021. The People then provided the report, which included that investigator's name, to defendant within two weeks. In view of this, the People did not violate their discovery obligations by updating the potential witness list to include these individuals — whose names had previously been disclosed — when they were eventually determined to be potentially relevant witnesses (see CPL 245.20 [1] [d]; cf. People v McCarty, 221 AD3d 1360, 1363 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; see generally People v Bonilla, 229 AD3d 850, 854-855 [3d Dept 2024], lv denied 42 NY3d 1018 [2024]). Finally, the May 2021 witness list indicated that a "[r]ecords custodian from [the hotel]" was a potential witness at trial. Yet, this individual was not named until the provision of a subsequent witness list in November 2021. The People have explained that they were unaware of the identity of who may testify on behalf of the hotel and, when they were eventually notified of who was to testify, they "turned this information over [to defendant] as soon as they received it" (see People v Burrows, 237 AD3d 1481, 1483 [4th Dept 2025], lv denied 43 NY3d 1054 [2025]; People v Odusanya, 235 AD3d 1299, 1302 [4th Dept 2025], lv denied 43 NY3d 965 [2025]; People v Robbins, 206 AD3d 1069, 1072 [3d Dept 2022], lv denied 39 NY3d 942 [2022]).
As Supreme Court correctly found upon remittal, these efforts exhibit that the People exercised due diligence as they made "reasonable efforts to comply with statutory directives" and, therefore, the modifications made to the May 2021 and November 2021 witness lists did not render the initial certificate of compliance illusory (People v Bay, 41 NY3d 200, 211 [2023] [internal quotation marks and citation omitted]; see People v Contompasis, 236 AD3d 138, 150-151 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). As a result, we find defendant's statutory speedy trial argument to be without merit (see CPL 30.30; People v Grandoit, 242 AD3d 1298, 1301 [3d Dept 2025]), and we now review the remainder of defendant's arguments not addressed in our prior decision.
As to the preserved portion of defendant's legal sufficiency challenge,[FN1] "[i]n conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as [*3]a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Lall, 223 AD3d 1098, 1100 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 984 [2024]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Ashe, 208 AD3d 1500, 1501 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 961 [2022]; see People v Alger, 206 AD3d 1049, 1050-1051 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]).
As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the fourth degree when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more" (Penal Law § 220.09 [1]). "A person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). Finally, "[a] person is guilty of criminally using drug paraphernalia in the second degree when he [or she] knowingly possesses or sells . . . glassine envelopes . . . under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant" (Penal Law § 220.50 [2]).
Initially, there was legally sufficient evidence linking defendant to the hotel room where the drugs were found, thereby establishing constructive possession. "Where . . . a defendant is not found in physical possession of the controlled substance, constructive possession can be established upon a showing that he or she exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found" (People v Paul, 202 AD3d 1203, 1205 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1034 [2022]). Relevant to this argument, the officer who initiated the traffic stop testified that he found room key cards for the hotel room where the drugs were ultimately found when defendant and the codefendant were searched during the traffic stop. It was then confirmed that defendant was on the hotel guest list and had rented the room in question. Thus, when viewed in the light most favorable to the People, there was legally sufficient evidence to prove that defendant was an occupant of the hotel room where [*4]the drugs were located (see People v Paul, 202 AD3d at 1207; People v Shabazz, 177 AD3d 1170, 1172 [3d Dept 2019]).
As to the weight of the evidence, although a different verdict would not have been unreasonable considering that the cocaine and heroin were located on a separate bed than the marihuana and defendant had only possessed marihuana during the traffic stop, the jury had the opportunity to consider each witness' testimony and found them and their recounting of events credible. Thus, viewing the evidence in a neutral light and deferring to the jury's credibility determinations (see People v Ashe, 208 AD3d at 1501; People v Furman, 152 AD3d 870, 875 [3d Dept 2017], lv denied 30 NY3d 1060 [2017]), the verdict is supported by the weight of the evidence. First, at least 7.7 grams of cocaine and at least 4.8 grams of heroin were recovered from inside the hotel room rented by defendant and defendant had on his person the key card to that room. Accordingly, the weight of the evidence supports the guilty verdict for criminal possession of a controlled substance in the fourth degree for both the cocaine and heroin (see Penal Law § 220.09 [1]; People v Paul, 202 AD3d at 1207-1208). Further, the quantity of drugs found, the absence of personal use paraphernalia, the presence of glassine envelopes in the rental vehicle, the claim that they were on the way to visit family at 3:15 a.m. and the lack of any luggage are all suggestive of an intent to sell. Accordingly, the weight of the evidence supports the guilty verdict for criminal possession of a controlled substance in the third degree for both the cocaine and heroin (see Penal Law § 220.16 [1]; People v Garcia-Toro, 155 AD3d 1086, 1088 [3d Dept 2017], lv denied 30 NY3d 1115 [2018]). Finally, the glassine envelopes in the vehicle and the quantity of drugs found at the hotel room support the guilty verdict for criminally using drug paraphernalia in the second degree (see Penal Law § 220.50 [2]; People v Hollis, 219 AD3d 1686, 1688 [4th Dept 2023], lv denied 40 NY3d 1039 [2023]).
Defendant next challenges the validity of the search warrant issued for the search of the hotel room. "[T]o establish probable cause for the issuance of a search warrant, the warrant application must demonstrate that there is sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Jackson, 206 AD3d 1244, 1245-1246 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1151 [2022]; see People v Cazeau, 192 AD3d 1388, 1388 [3d Dept 2021], lv denied 37 NY3d 963 [2021]). A judicially approved search warrant is presumptively valid, and thus, "[a] court's determination that probable cause exists for the issuance of a search warrant must be afforded great deference" (People v Jackson, 206 AD3d at 1246 [internal quotation marks and citations omitted]; see People v Oliver, 172 AD3d 1457, 1458 [3d Dept 2019], lv denied 34 NY3d 1080 [2019]). The [*5]search warrant executed here demonstrated a proper nexus between the alleged crime at the scene of the traffic stop and the place to be searched (see People v Jackson, 206 AD3d at 1246). Although the application made no mention of the codefendant being associated with the hotel room, it did indicate that he was in the vehicle with defendant and that defendant admitted to having just come from the hotel. This admission, in addition to the large quantity of glassine envelopes found in the vehicle rented in defendant's name, the marihuana found on defendant's person and the crack cocaine found on the codefendant provided a reasonable belief that more illicit drugs would be found in the hotel room. Furthermore, the codefendant's possession of the crack cocaine in six individually wrapped bags suggested an intent to sell, and the warrant application noted that drug dealers often use rental vehicles and hide their supply elsewhere. This, in addition to the early morning hour and defendant's admission that he had traveled from New York City, provided added support that a search of the associated hotel room would uncover further illicit drugs, including but not limited to cocaine and marihuana. Accordingly, Supreme Court did not err in declining to suppress the evidence seized pursuant to the valid search warrant (see People v Cazeau, 192 AD3d at 1388; People v Brown, 167 AD3d 1331, 1332 [3d Dept 2018]).[FN2]
Supreme Court also properly denied defendant's Batson challenge and allowed the People's peremptory challenge to a prospective juror who had stated that she is "critical of the police and their dealings with the black community." "When a Batson challenge for the use of a peremptory strike is raised, a court must engage in a three-step test to assess whether peremptory challenges have been used by a party to exclude potential jurors on the basis of race" (People v Thaxton, 222 AD3d 1175, 1177 [3d Dept 2023] [internal quotation marks and citations omitted]; see People v Wright, 42 NY3d 708, 714-715 [2024]). "At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (People v Bridgeforth, 28 NY3d 567, 571 [2016] [citation omitted]; accord People v Thaxton, 222 AD3d at 1177; People v Hunter, 219 AD3d 975, 979 [3d Dept 2023]).
Defendant specifically argues that Supreme Court failed to engage in step two of the analysis, which requires the People to provide a race-neutral reason for the peremptory challenge. However, step two need only be undertaken if the court is satisfied that defendant made a prima facie showing that the juror was [*6]challenged on the basis of race in the first instance (see People v Thaxton, 222 AD3d at 1177; People v Hunter, 219 AD3d at 979). The court indicated that defendant failed to meet this initial burden. Defendant's arguments in attempting to make a prima facie showing were that the prospective juror was rehabilitated after voicing her distrust of the police in black communities and that she was the only black prospective juror on the initial panel. Although a prima facie showing of discrimination may be made based on a peremptory challenge of a single juror giving rise to an inference of discrimination (see People v Ramseur, 233 AD3d 1093, 1093-1094 [3d Dept 2024]), defendant failed to make the required articulation of a sound factual basis for his challenge during his Batson colloquy (see People v Hunter, 219 AD3d at 979). Instead, he relied on a blanket conclusion that the prospective juror was rehabilitated but, at the same time, failed to establish how the prospective juror was rehabilitated or how the alleged rehabilitation would suggest that the People's challenge was racially motivated. Accordingly, defendant failed to make his prima facie showing of discrimination and the court properly denied his Batson challenge (compare People v Cruz, 228 AD3d 1019, 1022 [3d Dept 2024]).
Finally, in consideration of defendant's criminal history, we do not find the imposition of an aggregate five-year prison term to have been unduly harsh or severe (see CPL 470.15 [6] [b]; People v Faublas, 216 AD3d 1358, 1359 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Burton, 215 AD3d 1054, 1064 [3d Dept 2023], lv denied 40 NY3d 927 [2023]).[FN3]
Garry, P.J., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant's argument at the close of the People's proof was limited to whether the People had proved his presence in the hotel room. This argument differs slightly from the argument advanced on appeal, namely that the People failed to prove he possessed the drugs found therein. However, due to the logical connection between these two arguments, we find his legal sufficiency challenge preserved to this limited extent (see People v Reinfurt, 241 AD3d 1015, 1017 [3d Dept 2025]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime[s] beyond a reasonable doubt" (People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1153 [2022]; see People v Shackelton, 177 AD3d 1163, 1165 [3d Dept 2019], lv denied 34 NY3d 1162 [2020]).

Footnote 2: Defendant's assertion that the odor of marihuana did not establish probable cause to search the vehicle is without merit. Penal Law § 222.05 (3) (a) does not apply retroactively (see People v Pastrana, 41 NY3d 23, 30 [2023], cert denied ___ US ___, 144 S Ct 1066 [2024]) and the suppression hearing here occurred prior to the effective date of the legislation (compare People v Martin, 242 AD3d 18, 22 [3d Dept 2025], lv granted 44 NY3d 985 [2025]). As such, there was probable cause to search defendant's person and the vehicle at the time of the traffic stop (see People v Sanchez, 196 AD3d 1010, 1012 [3d Dept 2021], lv denied 37 NY3d 1029 [2021]; People v Hines, 172 AD3d 1649, 1651 [3d Dept 2019], lv denied 34 NY3d 951 [2019]).

Footnote 3: Defendant's challenge to the severity of his sentence is not rendered moot by his apparent release to parole supervision (see People v Belcher-Cumba, 226 AD3d 1219, 1220 n [3d Dept 2024]).